et al. On behalf of the Avalanche, Mr. Larry Wechter. On behalf of Anthony Johnson-Leahy and the Men's Wing, Mr. Thomas H. Boswell. On behalf of Thomas Gooch and Associates, Ms. Rebecca Lee. Thank you. Mr. Wechter, you may proceed. Good morning, and may it please the Court, Larry Wechter for the Appellant, Tri-G, Inc. Your Honors, there were four grounds on which the trial court granted summary judgment to my opponents in this case. I can discuss each one of them individually or however you like. If there's some specific question from you or specific focus that you have, I'd be happy to address that first. Why don't you Basically, there are three reasons res judicata does not apply, which is because none of the three requirements for invoking res judicata are present in this case. First of all, we have two different sets of parties in the two cases. In the case in which there was a suit by my client against the Burke Law Firm, or BBW, as it's frequently referred to in the documents, there was a lawsuit against that law firm for basically losing the lender liability case against Elgin Federal Bank. The case was sent back to the trial court on the attorney's fee issue, correct? On the consumer fraud act. Correct. And then there was a dispute apparently between the attorney and the client regarding those fees. Actually, both sets of attorneys and the client concerning those fees, correct? There was a dispute as to how much of the previously agreed settlement of those fees would be divvied up among them. Yes. So sometime prior to the case being heard and the agreement being entered, though, there was an attorney lien petition filed, correct? There were attorney lien petitions filed by Gooch and also by the Edelman firm, which was the firm representing Tri-G on appeal. Could your client have filed a counterclaim in that case? I don't believe so. Why not? Well, for a number of reasons. First of all, I think the main reason is in the classic sense of being an adversarial lawsuit, like a contract action, a negligence action, what have you, that's not what a lien adjudication is. It's a question of who's going to put their finger in the pot, in the race. How much of this pot of money is each claimant going to get? So it's not the same as a fee petition? If you had a divorce case and you had the, a lot of times, most of the time we see fee petitions in divorce cases. And so, I mean, isn't that the same thing? You have a fee petition in a divorce case, isn't it the same thing? We're seeking a judgment for the attorney's fee? Well, I think what you're referring to are the cases that the defense has cited in this situation where there's an adversarial divorce proceeding. And then within that same proceeding, there's a dispute as to whether the attorney representing one of the parties was negligent and therefore the claims both as to the divorce issues and as to the malpractice are all intertwined. I need to stop you and ask you this question. I understand your argument about the, whether there's an inherent adversarial situation with regard to those particular issues, but in this district, isn't the law that the attorney's plan for fees and a malpractice action are supposed to be a single cause of action where a counterclaim is mandatory? How does that square with that law? Well, but it depends on the facts. In other words, what Gooch has presented is in every single instance where there's a dispute about attorney's fees, that makes the counterclaim mandatory. But once again, it depends on the context. So in the divorce context, we have lawyer A representing one party. And along with the resolution of those issues, we have the parties saying, gee, my lawyer did a poor job. And so the whole context is intertwined. All the issues are related to one another. And in those cases that Gooch cites, the disgruntled party asserts some of the same claims or defenses against the lawyer that were involved in the divorce case. And that's not the situation here at all. Mr. Werchter, as I understand it, when the settlement agreement was reached, the malpractice suit was pending, correct? Correct. Did the release of a reference to or mention anything about the malpractice case? It mentioned absolutely nothing about Trygee versus Gooch and Mangling. So that would be your argument, it wasn't intended to include malpractice? Part of the argument, yes, indeed. There's no mention, in fact, there's no mention of Mangling at all. But the release, if you look at the, I don't know, ten or so recitals in it, in addition to all the other language, everything in it references this case against BVW. That's the whole context of the release. And let me just, this dovetails with the question of, you know, the first argument as to the release itself. The release indicates that on the one hand, we have the Burke Law Firm. On the other hand, we have as a group Trygee, Gooch, and Mangling. And the BVW, the Burke Law Firm, releases that group called Trygee and Attorney lien-releasing parties, and the latter releases the Burke Law Firm. And those are the only releases stated in the document. There's absolutely no reference to this case. There are many, many specific references to McHenry County case number 95LA369. That's the Burke case. There's absolutely no reference to 08LA42. What about this reference, though there is some broad language, is there not, that says this is intended to resolve the standard boilerplate ball of the claims and causes of action between the parties? So how does your argument square with that? Well, I think boilerplate is a good term for it. Every single instance where that language occurs in the release is referenced, again, to the lawsuit against Burke. In other words, the phraseology that you refer to, if you look at the entire sentence or the entire paragraph, it says we want to release any and all claims, or whatever the language is, with reference to the lawsuit against the Burke Law Firm. So there's some limiting language in there that's saying it obviously takes it out of the context of the malpractice case. It takes it, it includes only, all the language in the release, references only the case against the Burke Law Firm. So, I'm sorry, am I disrupting your thought? Let me ask you another question. Obviously a point that I think Hanger had in the second just to still argue that there was a mandatory counterclaim situation, at least ostensibly, that should have been handled in the context of the settlement. Does that apply when you have a release? This is a little bit different than the classic case where you have one cause of action fully litigated, and then somebody comes back and tries to litigate piecemeal, something that could have been brought up in the earlier litigation. But here you have a release. So, does that apply? Does it raise you to kind of still apply, even though you're not in the situation, arguably, of a classic mandatory counterclaim situation? Can I back up just a step? I don't think this is a mandatory counterclaim at all. The only time a counterclaim would be mandatory is if the same operative fact would apply to both lawsuits, and they don't. Would a successful counterclaim have nullified the $50,000 judgment in favor of Gooch? You mean the divvying up of the $400,000? No. It wouldn't have nullified that. The only question, with reference to the lien adjudications that are before the lien, is $400,000. Who has the right to this piece of the race? Who has the right to that? But the sum of money was for something. The sum of money was attorney's fees for the prosecution of the Consumer Fraud Act claim. Right. Against the Burke Law Firm? Against the Burke Law Firm. Right. Now, part of the malpractice suit alleged that those should have been converted into present value. So that was part of those, I mean, the fees for the award of judgment for the Consumer Fraud Act claims, and therefore the attorney's fees arising out of that, was bound together with this claim in the malpractice suit for present value damages, wasn't it? Were we talking about the same damages? We're not talking about the same damages because first of all, in order to prevail, TRIG has to prove the negligence of Gooch and Mengling during the course of the trial. Right. That's what they've alleged. And in a lien adjudication, you can't resolve those issues. For one thing, TRIG has the right to have a jury trial on the negligence claim. There is no such thing as a jury in a lien adjudication situation. There's a counterclaim. I mean, if you file a counterclaim, you can ask for a jury trial. Can you not? But, but the difficulty is that now you're asking TRIG to bring into this lien adjudication, which is a limited type of a proceeding, a completely different type of case against the very people who are representing the corporation at the time of the resolution of the consumer product and so forth. As what happened in Dowd, as what happened in Casney, and the same issues are there. We've got attorney's fees being litigated, and then you bring, at least the second district is saying you have to have a counterclaim here if you're There is no shelling made on this record that whatever claims or defenses were being asserted in this lien adjudication case were the same type of claims and defenses being made in the lawsuit against Gluch and Mangling. And that's what distinguishes it from the situation that you posited, the divorce type situation. But the question is, why would TRIG agree to hand over $50,000 of its money, of its attorney's fee award, when it has a legal malpractice claim pending against those very attorneys? Well, I guess I would characterize it slightly differently. There's a settlement. There's And then the question is, are the attorneys representing TRIG in this manner then entitled to X dollars or Y dollars, or what are they entitled to? Why would they be entitled to anything if they committed malpractice? There's a settlement award. There's a settlement among the parties. And the question then is, what do we do with this pot of money? And I don't know if I'm answering your question, but it would be a rather bizarre situation if TRIG was in there at the same time that its own lawyers representing it are fighting over this pot of money, not in an adversary, strictly speaking, adversarial situation, and then have to file a counterclaim against them in a completely separate lawsuit where the issues are different. They're not identical issues. Seems to me, though, that that would be a classic case of judicial efficiency when you would have a jury deciding the issues of malpractice and you'd have a judge then deciding the attorney leads. Happens all the time. There are a lot of times where a jury will be deciding a certain set of issues and a judge deciding other issues related to the same thing. If they're the same issues, if it's the same lawsuit, if it's the same adversarial proceeding with the same parties at issue with one another. I mean, it really, the rock-bottom question here is if there's really a contemplation of a settlement of a separate malpractice case against Gooch and Mengling, why is there no mention of it whatsoever? Why is the entire proceeding limited by court order to resolving this question of the lead? That's the only thing that's before the circuit court at the time that all of this is resolved. But that's the point. They could have filed a counterclaim or certainly have leaved to file a counterclaim and didn't, right? And surrendered their right to a jury trial? Again, why would they be barred from having a jury trial and a counterclaim? Because it's a lien adjudication proceeding where there is no right to a jury. But the counterclaim is a separate claim. You can have a jury trial and a counterclaim, can you not? Depending on the nature of the claim. A consumer fraud claim does not allow for a jury either. A legal malpractice claim. The counterclaim would be a legal malpractice counterclaim. You have the right to a jury trial on that. Right. But it's not a mandatory counterclaim. And everybody knows this case against Gooch and Mengling was pending at the time. Everyone knows that. And yet the proceeding is limited to the lien adjudication by the court's orders. And the issue is never raised. And nobody says anything about Gooch and Mengling being released by TRI-G in the terms of the release. I mean, that's the issue. The issue really is if it's a mandatory counterclaim or whether it's a permissive counterclaim. If it's a permissive counterclaim, you're right. I mean, nobody raised anything, a big deal. So we move on with the legal malpractice case separate and apart from this. If it's a mandatory counterclaim, then there's a problem. But isn't there an issue, though, as to, I mean, the rock-bottom issue is, what does this document say? If this document doesn't say anything, how about the release? Well, I'm looking at the agreed order that was entered prior to the release, September 3rd, 2008. It says it's hereby ordered that TRI-G, by and through its president, will pay Thomas W. Gooch III the sum of $50,000 within 30 days of the date of this order. So, again, my question gets back to why is TRI-G agreeing to give Gooch a dime when they know they have a legal malpractice action against Gooch? Well, I think, you know, the order was drafted, as I recall, by Mengling, and I think the language you're referring to is perhaps inartfully drawn. TRI-G doesn't have any of this money. This is money that is being held by the attorneys for the Burke Law Firm, by the insurance company for the Burke And if you look at the release, my best recollection is the release says that the Burke representatives will pay X dollars to TRI-G, X dollars... But the order goes on to say that later also. The order itself goes on to say that later in the order, where the money's going to come from. In the release itself, I'm afraid. No, the order itself. You haven't talked about the September... Yeah, that order precedes the release. Precedes the release. Right. Right. So, have I answered your question? I'll give it a little more... We'll have time for that. Yeah, I'll chew on it in the meantime. I don't know who's going to go first. Who's late? You may proceed. Good morning, justices, counsel. May it please the court. There are four primary issues, and Attorney Boswell and I have attempted to divide our time and the issues. I will address the release, the res judicata, and the remitted arguments. And Attorney Boswell will readdress the release and the cross-appeal argument. With respect to the release, briefly, I'll address the release first, because Your Honor asked opposing counsel a question about the release and whether there's limiting language, and I would submit to you that he skirted answering that question because there is no limiting language in the release. Well, let me, again, the malpractice suit was pending when the release was executed, correct? Correct. Okay, so... It was well known to both sides. I didn't see here reviewing the lease any specific reference or mention of the malpractice or the breach of contract claim. If there was an intention to specifically release that and resolve and settle that, why wasn't it referred to in the terms of the lease? The release does not specifically reference the malpractice action by case citation, but I would submit to you that it is contemplated by the parties in the language that includes any claims related to the lawsuit, the lawsuit being the lawsuit tried to verdict by Gooch and Mengling. Well, why not say that? I would submit to you that it doesn't have to be in there to have been released. The release, could there have been more ideal language releasing this instant claim? If it were pending, wouldn't it make some sense, wouldn't it be a protective measure to specify it? It would be a protective measure. There could be more ideal language. I mean, this is sort of the theme running through the history of this litigation, so to speak, is that things were not pinned down and then they keep spawning further litigation here. If I'm drafting a release, it's like, hey, you know, we're going to nail this thing down. There's going to be no room for ambiguity. And certainly, I assume that that was the intention of the parties. It could be more ideally drafted. But at its base, it is a general release of all claims. It's titled a general release. In many different places in the release, the parties state their intention to release any and all claims. Appellant would have it read in a vacuum so that we are only looking at the two places of the release where the parties are addressed in groups. Again, the release of claims against who's releasing whom for what. Well, and that's the thing. It's a release of all kinds of claims, including an adversarial claim by Gooch against TRI-G. Appellant's position in the trial court and in its brief is that Adleman, Gooch, and TRI-G are one unit. Gooch can't be released from the malpractice claim within the agreement because they're one unit. They can't be one unit. Gooch is individually executing the release because of his adversarial claim against TRI-G at the time of the agreement, the execution of the release. There is a release of the attorney fee claim against the Burke Law Firm. There is a release of Adleman's attorney fee claim, and there is a release of Gooch's attorney fee claim. That release, the general release between all of these adversarial parties, serves as a general release to all claims that are pending, all claims relating to the lawsuit, which certainly this instant malpractice action relates to the lawsuit, but all claims, known or unknown. It does have the boilerplate language of a general release because that's what it was, a general release between all of the parties. The parties to the release included TRI-G and Gooch, and by extension, it's Gooch's agent, Meingling, who had tried the case to verdict with him. Who drafted this release? I believe that the release was drafted by TRI-G's attorney. And we're going to look at the plain language, and the plain language says that these group of people here are releasing this company, and this company is releasing these group of people. Where is the plain language that says that these group of people are all releasing each other? I mean, we've got this language that Appellant is relying on in the release that talks about, on the one hand, we have this group, and on the other hand, we have this company. I think that the, on the one hand and on the other hand, misleadingly groups the parties together, but I think inherent in the... Wait, wait, wait, misleadingly, who are we misleading? Again, we're talking about the plain language of this release. The plain language of the release. The plain language of the release resolves the adversarial claim of Gooch against TRI-G. Well, you mentioned the word misleading, but everybody up until this point, when you mentioned the word misleading, said that this release is clear and unambiguous. So how could it be clear and unambiguous and misleading at the same time? Well, when I say misleading, I don't mean that the language is misleading. I think that the interpretation of the language by Appellant is misleading. I think that to say that they're a single unit, Gooch and TRI-G are together in this release, is misleading. They're clearly not together. Gooch has filed an adversarial, he's not representing them, he's filed an adversarial claim against TRI-G. That adversarial claim is resolved first in the agreed order that's entered and then ultimately in the general release that's executed. The general release releases all of the parties from all of the claims that they may have against one another. It's those same parties that agreed order is a final judgment of that attorney fee claim, which leads me to my race judicata argument. Is this release a final judgment? Yes. What makes it a final judgment? There was no hearing, right? There was no hearing, but I would submit to you that actually it's the agreed order before the release that's the final judgment. Ultimately, the agreement between the parties and the resolution of the attorney fee claim, which results in the dismissal of it, is the final judgment. Is that a judgment on the merits or is it just a judgment? It's a judgment. An order that's been entered. It's an order that's been entered. But I think that the case law supports that agreement being a final judgment, which is enforceable for race judicata purposes. And I would submit to you that it is a mandatory counterclaim. Again, I think Appellant tries to dance around the issue of why was a counterclaim not filed. Well, it's the overarching issue, as you said. He's going to argue, naturally, that it was not a mandatory joint or a cause of action situation. He's going to argue that it was. Now, tell us why it was. Because the law of this district is that there is one cause of action for an attorney's claim for fees and a client's claim for malpractice. The law of this district is that that's one cause of action, and I think that Bennett and Casney support that position that you have to file a counterclaim. That's the general rule, then. So based on what you're saying, there could never be a situation where parties could construct a release that would still preserve, by agreement, if you would, a cause of action if they wanted to. They would have had to resolve the malpractice claim in the release you're saying, right? I'm saying that by failing to file a counterclaim and resolving the attorney fee issue. Well, they already had a malpractice case on file before it even got to the release. What were they going to file a counterclaim? They filed the malpractice action, right? But it should have been one consolidated action. And because they knew of it, for that very reason, it's more important that they file it as a counterclaim for reasons both of judicial economy and because the law of this district is they are one cause of action. That's generally true, right? There are no exceptions, then. You can't carve out an exception by agreement with parties with a settlement agreement. I think they certainly could have carved out an exception, but they failed to. He's going to tell us that they didn't, but go ahead. For purposes of this analysis, there is an identity of parties. To suggest that because this malpractice case doesn't involve the Burke Law Firm, there's no identity of parties is silly. There need only be an identity of relevant parties, and there's certainly an identity of relevant parties. There is an identity of causes of action because the law of the district is that it's a single cause of action, and there is a final judgment. The appellant's claims are barred because they are res judicata. But what is this waiver argument, that the claim was waived? That the res judicata claim was waived? I believe that the waiver argument relates to the mangling defendant, and because both of the defendants incorporated the arguments of one another at summary judgment and in their briefs, I would allow Mr. Boswell to speak to that, but I don't believe that it's been waived. Are you going to cover the remitter issue? I am. With respect to the remitter, there is no question of fact as to the proximate cause of TRI-G's reduced compensatory damages aboard. It voluntarily remitted those damages. How can your client rely on that when your client counseled TRI-G to do that, and your client was adamant, according to the pleadings, that he would not retry the damages issue? I don't believe that Gooch is equitably estopped from making this argument because his representation was limited in scope from the outset. He represented them for oral argument purposes only. Everyone knew. All of the parties knew. Gooch was not going to retry the case, was not going to represent them further than the oral argument. But did he advise them to take the settlement? He advised them that he would not retry. I thought the pleadings said that he advised them, he cajoled them even, to consent to the remitter. Mr. Geschke was deposed as president of TRI-G and indicated that he felt, I don't remember. He was cajoled. He was the word coerced. He might have used specifically cajoled. He felt cajoled because, but he knew that the option was available to him to find new counsel because he testified. He met with three attorneys and was unable to talk them into taking the case. He knew that it was entirely his decision whether to consent to the remitter. He explored alternative counsel, and his inability or lack of diligence in finding counsel that would retry the damages case doesn't create an equitable stop-all. But don't you see a conflict of interest there? Again, we're talking about the better course of action. Should he have advised them at all about accepting the remitter? Shouldn't there have been independent counsel to make that claim that we had this other issue looming? Frankly, I think that there was the suggestion of independent counsel, which is why Mr. Geschke and TRI-G were seeking out an attorney who would retry the damages case. They voluntarily consented to the remitter, however, because they recognized the risk. Mr. Geschke's deposition makes abundantly clear that he recognized the risk of retrying the damages case and elected not to take it. His criticism now that the Gooch and Mengelich defendants didn't present the relevant evidence, didn't submit the right jury instructions, those options were available to him in retrying the damages case. It was found in the summary judgment motion, is that correct? Yes. Okay. And you said the President testified that he was cajoled, I believe that was the correct language, used into accepting the remitter. So what counter evidence for Anthony Davids was presented to counter his testimony? I don't believe that Anthony Davids was necessary because he was questioned at length after he claimed he was cajoled into it. And I think that his testimony demonstrates he wasn't coerced, he wasn't under any coercion or duress. He might have felt pressured, but frankly, his having felt pressured doesn't overcome his voluntary action. It was a voluntary action. But in the context of a summary judgment, if his testimony stands uncontradicted, doesn't that create a problem for a summary judgment? I think it was inherently contradicted in his own deposition. I think that through further questioning, counsel demonstrated that his having felt cajoled didn't make his action involuntary. But arguably that could be for the trier of fact also, couldn't it? If it were determined that that were in fact a genuine issue of material fact, I don't believe, I would submit to you that there was not enough in his deposition to prove or suggest even that the act was involuntary. The remitter was voluntary. If there are no further questions, I'll cede the rest of my time to Mr. Boswell. Thank you, counsel. Mr. Boswell? Good morning, Your Honor and counsel. I represent Dan Maling in this matter. If I could circle back to this release issue for just a moment and remind the court that our motion and our position here is based on an Illinois Supreme Court case that deals with general releases. And that Supreme Court case, Farm Credit v. Witchfield, I believe is the defendant. It says that in a general release, even claims that aren't named in the release are released so long as the parties are aware of the claim before the release is signed. And that's exactly the situation here. Could the release have been drafted better, perhaps? I mean, we can always, in hindsight, see some things that could have been done better. But based on the law, this release is a general release. There's no dispute that these parties were aware of the malpractice claim before the release was signed. How does it apply to your claim? Because your claim's not named in the release. My claim's not named, but the cause of action against my client is based on vicarious liability. In paragraph 28 of the plaintiff's complaint, the plaintiff says, Mr. Mingling committed these acts of negligence vicariously through Mr. Gooch and then lists all of the specific acts of negligence. So whatever applies to Mr. Gooch applies equally to Mr. Mingling. Does the release refer to the agents of Gooch, too? I believe it does. So that would be your argument that Mingling is an agent of Gooch? Mingling is an agent. In another portion of the complaint, he's referred to, I believe, as a partner of Gooch. So I believe that the two are – Because of that, you're saying he shouldn't have been named in the release? No, I'm not saying he shouldn't have been named. I'm saying that it's not necessary for him to have been named. Once Gooch is released, then Mingling, through Gooch, vicariously is released. Doesn't that have further evidence that the intent of the parties was not to release these malpractice claims because your client was clearly a party in the filed malpractice suit and not even mentioned in the release? Well, I suppose if you start scratching below the plain meaning of the language of the release, you could make that argument. I believe that the plaintiff does, in a way, make that argument. But I believe that the release here is so clearly a general release. I mean, it says it over and over again. And I differ with counsel when he says that other claims aren't mentioned in the release. For one, we know the Lee issue is mentioned in the release. But the release language actually, in the recitals, defines the lawsuit. That's a specific definition. And it's defined as this malpractice case against Burke, Bosselman, and Weaver. And then in the release language, the release says at paragraph 4, this agreement is intended to settle and resolve any and all differences or disputes that may exist, including but not limited to claims related to the lawsuit. So if your client had visited TRI-G and had slipped and fallen prior to this release, then that would have been released, too. That slip and fall case would have been released, too. Well, it's any and all claims, right? It's everything. Everything in the world that possibly could be offered. I believe that's true. But, Your Honor, I mean, we're talking about the language of this release that refers specifically to claims related to the lawsuit. It doesn't say included but not limited to the lawsuit. It says claims related to the lawsuit. This malpractice case against Guccianigle certainly is related to the lawsuit. And then it goes on to say including these claims between, on one hand, Burke and Bosselman. And then it goes on in a separate unnumbered paragraph. I mean, that's one place where we can see that this was a general release, arguably with language dealing specifically with this lawsuit. But then it goes on to say in an unnumbered paragraph, it is the intention of the parties that the foregoing releases be general and unconditional releases, period. And then it goes on to say, as used during the term claim or claims, in any and all manner of action or actions, causes of action, suits, demands, counterclaims, so on and so forth. It does not restrict it to this particular attorney fee issue. The language here is broad. It is general. It does deal with some specific issues. And arguably, it could have been written to include one more specific issue. But under the Illinois Supreme Court authority, if it is a general release, and the parties here agree that the language here is unambiguous, if the parties intended to release all of their claims against all of the parties, the Supreme Court says that's what you do, even though the specific claim may not be mentioned within the release. I think you were going to talk about the PLA also. Can you, I mean, how is it foreseeable that this would turn out the way it was, it turned out as far as the way the Supreme Court ruled, the way, you know. Actually, what's the timeline here? Was the PLA filed by TRI-G, then the counterclaim? I'm sorry, the PLA was filed by BBW, then the counterclaim? As I understand it, they were filed simultaneously. And it's true that TRI-G couldn't have anticipated what issues Burke Bosselman was going to raise. But when, once Burke Bosselman filed its PLA and raised only the punitive damages award, the judgment, including these, according to the Supreme Court, excessive fees that had to be remitted, that was rock solid. That was theirs. And they opened the door by filing what we now know was a meritless appeal. This court found that their claim for prejudgment interest was wrong, and the Supreme Court, though for different reasons, also found that it was wrong. So they opened the door by filing that claim. So they should have withdrawn the PLA. I mean, if these things were filed at the same time, because, I mean, there's probably no reason for TRI-G to think that they were not going to pursue the compensatory damages claim in the Supreme Court. That's true. And they would have had the opportunity to withdraw it. If I can analogize this to a medical malpractice claim. A patient has a condition, and Dr. A botches the condition. But the patient fully recovers. And in this situation, had TRI-G just left things alone or withdrawn their appeal, they would have received these excessive fees as a final judgment. Instead, the patient goes to Dr. B and says, I'd like to try to get a little bit better result. I'd like to be a little bit better off than I was before I started this process. And takes that risk and has a procedure. And Dr. B botches the procedure so that the patient is now even worse off than he was before patient A. And that's the situation here. We've got a trial. The plaintiff claims that the lawyers botched the case, and they lost these excessive fees as a result of that. However, once Burke, Bosselman, and Weaver didn't raise that issue in their PLA, that was done. They could have recovered. Not could have. They would have recovered. It would have been final. So your position is they set the wheels in motion that ultimately, voluntarily set the wheels in motion that ultimately led to their loss of money? Even more than that. They set the wheels in motion after they had a rock-solid judgment. Was it foreseeable that the Supreme Court would rule that that was opening the door? Because, I mean, it was seeking pre-judgment interest on the compensatory. It's not theoretically opening up the door to all the compensatory damages. Everybody will say, yes, it was. But I'm just saying, is that a question of fact? I don't think it is. I think it has to be a question of why. Normally, approximate cause is a question of fact. Well, but except when it's, you know, there's, we could go through the whole approximate cause analysis, and this would be the legal cause problem of that analysis. And this is something that the Supreme Court decided as a matter of law, that these are the procedures that you set out, and when you follow our procedures, we as a matter of law find that you opened this door. And so I don't think that there's any argument that the approximate cause from that aspect of the claim was trying to use. There are other claims, though, that are separate apart from this. I mean, this present value issue is separate apart from this compensatory, correct? It is. It is. When we talk about this issue and the remediator issue, we're talking about what the Supreme Court ruled was excessive fees because of various reasons. And this does not touch on the other issues. So if we were to agree with your argument and the co-counsel's argument on the remediator and the PLA, but not agree with you on res judicata and waiver, then this has to go back on the present value? Waiver and release. Waiver and release. Yes. Yes. That would be true. We would have to determine whether this issue of adjustment for inflation is appropriate. Thank you, counsel. Mr. Wechter, rebuttal argument? I think that if I can be so bold, Justice Hudson was suggesting that this case resembles Dickens' Bleak House a little bit, Jardis v. Jardis. And I think that coincides with this whole question again of res judicata. And if I could be so bold in another comment, I think that the discussion about res judicata has taken a little bit of a step beyond where we're supposed to be at this point. This was a summary judgment motion. It is the defense burden to show certain things in order for res judicata to apply. They have to show that the same parties were involved in both suits, and yet Mr. Mengling, in his brief, concedes the parties are separate. That's page 13 of his brief. They have to show that there was a single group of operative facts. For all that the record indicates, there's no demonstration that the defense or claims in the lien adjudication matter were the same claims and defenses as existed in the current lawsuit. A lawsuit was pending at the time that this release was entered into. The case was at issue. What is it that the defense is suggesting? Suggesting that we file a second lawsuit when we have a lawsuit pending? You know, other than a counterclaim, the same result would apply if you moved to consolidate the cases for trial. But again, where is the same group of operative facts here? But if you had moved to consolidate and that had been denied, then there's probably no issue on the res judicata because you've been denied your day in court. I mean, if the trial court, even if perhaps the trial court would have erred by denying that motion to join the cases. But again, it begs the question as to why are we required to file a counterclaim when we have a lawsuit already pending against these people and the release says absolutely nothing about that lawsuit? Isn't the court supposed to resolve this question based on the four corners of the document and not go beyond it and not question? I don't want to conflate the release and res judicata. I mean, if you're looking at them, you can look at them together. But I mean, if you look at them separately, whether they're elements of res judicata apply. And I mean, your argument right now is conflating the two. And what we were talking about earlier is simply the elements of res judicata and separate apart from the release, looking at the order and the resolution of the attorneys fees issue. To demonstrate the application of res judicata, the defense has to show we have the same parties in two different lawsuits. Well, the same parties. If you have a divorce case, and we'll get back to a divorce case. If you have a divorce case where this district has spoken pretty decisively that you have to file a counterclaim. If in the language of Bennett, some of the claims in the malpractice complaint, quote, virtually mirrored the affirmative defense. I was talking about the parties now. You mentioned the parties, and I was focusing on the parties. I mean, I understand your argument on the claims, but I was focusing on the parties. If you have a husband and wife getting a divorce, those are the parties to the lawsuit. Now, all of a sudden, you have this party's attorney seeking fees from his or her client. All right. Okay. Then every res judicata argument would be, well, we don't have the same parties because this attorney wasn't a party to the lawsuit. And that's the argument you're making. The attorney wasn't a party. We had BBW versus Tri-G. But even if we accept your premise and we take it a step beyond that, we've got the Edelman firm trying to put its finger in the pie at the re-adjudication matter, which is a firm that isn't involved at all in the lawsuit against Gooch and Mangley. So we don't have an identity of parties, no matter how you slice it. And we don't have the same group of operative facts as to the two cases. Perhaps, perhaps, speculating, if the defense had developed this question more in the trial court as to what are the claims and defenses of the parties, instead of relying on the release language itself, maybe there would be some additional arguments to make here. But all we have in front of us is a release that is unambiguous, that never mentions this litigation that is pending. And I don't think that at this development or lack of development of the record that the court needs to go any further than that. Did you want me to address any of the other issues? No. Okay. Well, Mr. Rector, thank you very much. Thank you. We would like to thank all the attorneys for their arguments today. The case will be taken under advisement and we will take a short recess.